```
         UNITED STATES DISTRICT COURT
        FOR THE DISTRICT OF NEW HAMPSHIRE
```

Florence Martha Degregorio

    v.                                                  Civil No. 11-cv-196-SM

Michael J. Astrue, Commissioner,
Social Security Administration


### REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Florence Degregorio moves to reverse the Commissioner's decision concerning the date on which she became disabled for the purpose of awarding her Social Security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423.  The Commissioner, in turn, moves for an order affirming his decision.  For the reasons that follow, I recommend that the decision of the Commissioner, as announced by Administrative Law Judge ("ALJ"), be affirmed.

### Standard of Review

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

> remanding the cause for a rehearing. The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g). However, the court "must uphold a denial of social security disability benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). But, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the

evidence is for the [Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d at 765, 769 (1st Cir. 1991) (citations omitted). Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988). Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## Background

The parties have submitted a Joint Statement of Material Facts, document no. 18. That statement is part of the court's record and will be summarized here, rather than repeated in full.

Degregorio worked as a hairdresser until July 15, 2007, the date on which she claims she became too disabled to work. She has been awarded disability insurance benefits, but based upon an onset date of November 1, 2008.

Between July 14, 2007, and November 1, 2008, Degregorio sought treatment on four occasions for psoriasis, which was

first diagnosed in the 1990s.  On December 18, 2007, she saw Jeff Johnson, a physician's assistant at Water's Edge Dermatology, for a follow-up on her psoriasis.  Degregorio's most recent previous visit to Water's Edge was on March 5, 2007.  The December 18 treatment note lists a diagnosis of psoriasis.  A section of the printed form devoted to symptoms lists about a half a dozen, including "Pain."  Administrative Transcript (hereinafter "Tr.") 184.[1]  In the symptoms section, Johnson checked the box for "None."  Id.  The treatment note concludes: "[f]lared up recently but overall psoriasis under control."  Id.  On January 23, 2008, Degregorio again visited Water's Edge.  In his treatment note, Johnson listed a diagnosis of psoriasis, circled three symptoms ("Itch," "Redness," and "Scaley"), did not check the box for "Pain," and made two relevant notations: "starting to clear" and "f/u psoriasis – improving  Few plaques noted."  Tr. 181.

On March 12, 2008, Degregorio visited Alan Rockoff for "an outbreak of guttate psoriasis."  Tr. 234.  Rockoff noted "[n]o constitutional [symptoms] or other skin problems" and diagnosed Degregorio with "Other Psoriasis And Similar Disorders."  Id.

---

[1] Specifically, the form has check boxes for "Color," "Size," and "None," allows the person filling it out to circle "Pain," "Itch," "Redness," "Swelling," "Bleeding," and "Rough/Scaley," and has a space for "Other: _____."  Tr. 184.

Finally, on September 11, 2008, Degregorio saw Eileen Brosnihan. Degregorio reported that her "psoriasis has been stable with only occasional flares," and Brosnihan observed "patches of mild psoriasis on the elbows, abdomen and knees," "mild scalp psoriasis," and "[n]o constitutional [symptoms] or other skin problems." Tr. 233.

The records of the four office visits discussed above are all of Degregorio's psoriasis-related medical records for the period from July 15, 2007, to November 1, 2008. None of those records includes a diagnosis of psoriatic arthritis or any other mention of that condition.

On November 24, 2008, Degregorio saw Johnson for another follow-up on her psoriasis. Johnson indicated three symptoms, "Itch" and "Rough/Scaley" plus "joint involvement," which he characterized as a "new development." Tr. 177. Notwithstanding the joint involvement, Johnson's treatment note listed a single diagnosis: psoriasis. See id.

When Degregorio next visited Johnson, on January 4, 2010, he listed "painful joints" as one of her symptoms. Tr. 230. The treatment note resulting from that visit includes the following notation: "Widespread psoriatic plaques [with] [symptoms] of worsening PsA." Tr. 230. Presuming that "PsA"

refers to "psoriatic arthritis," the January 4, 2010, notation appears to be the first reference to psoriatic arthritis anywhere in Degregorio's medical records.

Degregorio saw Johnson three more times before he listed psoriatic arthritis as an additional diagnosis, on March 29, 2010. See Tr. 244. In October of 2010, Johnson reported that Degregorio "has been receiving treatment from various providers since the 1990's for psoriasis and more recently psoriatic arthritis." Tr. 248.

At her hearing before the ALJ, Degregorio testified about two kinds of pain she has experienced, joint pain due to psoriatic arthritis and pain associated with flare ups of her psoriasis. Specifically, she said: "I stopped working because I had an awful lot of pain in my joints and my flare-ups with my psoriasis . . . ." Tr. 33. Regarding joint pain, she later testified: "I guess, '06 and '07 is when I started feeling the pain, and I honestly didn't think anything of it. I just figured it was from standing on my feet all day and, you know, my back hurting." Tr. 36. She also testified about pain in the soles of her feet caused by a big psoriasis flare-up in 2007. See Tr. 40-41.

After the hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

> 3. Since the alleged onset date of disability, July 15, 2007, the claimant has had the following severe impairments: psoriasis and psoriatic arthritis (20 CFR 404.1520(c)).[2]
>
> . . . .
>
> 4. Since the alleged onset date of disability, July 15, 2007, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that prior to November 1, 2008, the date the claimant became disabled, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) but she had to avoid exposure to chemicals, such as those contained in hair products, with her bare hands.
>
> . . . .
>
> 7. Since July 15, 2007, the claimant has been unable to perform any past relevant work (20 CFR 404.1565).
>
> . . . .
>
> 11. Prior to November 1, 2008, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that

---

[2] As an aside, the court notes that psoriatic arthritis was not mentioned in Degregorio's medical records until January of 2010, at the earliest. Thus, the ALJ's step-two determination represents either an error in Degregorio's favor or a rather substantial benefit of the doubt.

7

existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

. . . .

12.  Beginning on November 1, 2008, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

. . . .

13.  The claimant was not disabled prior to November 1, 2008, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g)).

Tr. 11, 12, 14, 15.

## Discussion

According to Degregorio, the ALJ's decision should be reversed, and the case remanded, because the ALJ incorrectly determined that she did not become disabled until November 1, 2008.

### A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  The only question

in this case is whether Degregorio was under a disability between July 15, 2007 and November 1, 2008.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  Moreover,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process.  See 20 C.F.R. § 404.1520.

9

>   The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 404.1520).

The claimant bears the burden of proving that she is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). She must do so by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)). Finally,

>   [i]n assessing a disability claim, the [Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the claimant or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

### B. Degregorio's Argument

Degregorio argues that the ALJ erred by determining that she became disabled on November 1, 2008, rather than July 15, 2007. In support of that argument she contends that: (1) the medical evidence establishes that she was suffering from her disabling disorders as of July 15, 2007; and (2) the ALJ "fail[ed] to determine whether [she] was credible and did not provide an evaluation as to her subjective complaints of pain." Cl.'s Mem. of Law (doc. no. 12-2). The court does not agree.

As a preliminary matter, Degregorio is flatly incorrect in asserting that: (1) "[t]he medical records show that [she] suffered from . . . psoriatic arthritis before this date [i.e., July 15, 2007]," Cl.'s Mem. of Law (doc. no. 12-2), at 7; and (2) she "was treating for her . . . psoriatic arthritis during this time [i.e., July 15, 2007, to November 1, 2008] at Water's Edge Dermatology," id. at 5. To the contrary, the record demonstrates that Degregorio first reported joint involvement (by all accounts a symptom of psoriatic arthritis) to Johnson on November 24, 2008, and he characterized that condition as a "new

development." Tr. 177.[3] Psoriatic arthritis was first mentioned in a January 4, 2010, treatment note, see Tr. 230, and Johnson first diagnosed that condition on March 29, 2010, see Tr. 244. Thus, there is no medical evidence to support a determination that Degregorio was either suffering from or receiving treatment for psoriatic arthritis at any time prior to November of 2008.

Degregorio is also incorrect in her characterization of the ALJ's decision. Rather than failing to assess Degregorio's subjective complaints of pain, the ALJ did assess those complaints, but did so without having to assess Degregorio's credibility.

With regard to the context in which credibility assessments are made, Social Security Ruling ("SSR") 96-7p

> outlines a specific staged inquiry that consists of the following questions, in the following order: (1) does the claimant have an underlying impairment that could produce his or her symptoms?; (2) if so, are the claimant's statements about his or her symptoms substantiated by objective medical evidence?; and (3) if not, are the claimant's statements about those symptoms credible?

---

[3] Given Johnson's reference to joint pain as a new development in his November 24, 2008, treatment note, Degregorio is way off base in arguing that the ALJ acted arbitrarily in selecting November 1, 2008, as the onset date for her disability. See Cl.'s Mem. of Law (doc. no. 12-2), at 7. Rather, the ALJ took a thoughtful and reasonable approach to assessing a very thin medical record.

Guziewicz v. Astrue, No. 10-cv-310-SM, 2011 WL 128957, at *5 (D.N.H. Jan. 14, 2011) (citing SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. 1996)). As for the first inquiry, SSR 96-7p explains:

> [T]he adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) – i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques – that could reasonably be expected to produce the individual's pain or other symptoms. . . . If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

1996 WL 374186, at *2. The analysis described above is premised on the well-established principle that "an individual's statement(s) about his or her symptoms is not in itself enough to establish the existence of a physical or mental impairment or that the individual is disabled." Id. Here, as the court explains below, Degregorio offers little if anything beyond her statements about pain as evidence of disability.

In the decision in this case, the ALJ determined that: (1) there was no medical evidence to support Degregorio's claims of disabling joint pain between July 15, 2007, and November 1, 2008; and (2) while Degregorio had the medically determinable impairment of psoriasis, her psoriasis could not reasonably be

expected to have produced disabling pain during the fifteen months at issue. The ALJ's first determination is unassailably correct, for the reasons already discussed. Degregorio never reported joint pain, a symptom of psoriatic arthritis, to any health-care provider until late November of 2008.[4] When she did, Johnson described "joint involvement" as a "new development," Tr. 177, and the term "psoriatic arthritis" did not even enter Degregorio's medical records until 2010, Tr. 230. Thus, there is no evidence that Degregorio suffered from a medically determinable impairment, between July 15, 2007, and November 1, 2008, that could reasonably be expected to have produced joint pain.

    The ALJ's second determination is supported by substantial evidence consisting of both the infrequency of Degregorio's treatment for psoriasis and the content of her treatment record.

---

[4] The treatment note from late November includes the first mention of pain of any sort in Degregorio's relevant medical records. While she concedes that those "records do not provide great detail as to her pain level or complications," Cl.'s Mem. of Law (doc. no. 12-2), at 5, that concession overstates the mentions of pain in Degregorio's medical records. Johnson's two decisions not to circle "Pain" in the symptoms section of a printed form may reasonably be interpreted as affirmations that Degregorio was not experiencing pain, rather than reports of pain that lack detail. And, in the two other medical records from the relevant time period, Degregorio's health-care providers affirmatively reported "[n]o constitutional [symptoms]." Tr. 233-34.

Regarding frequency, the ALJ pointed out that during the fifteen months at issue, Degregorio sought treatment for her psoriasis only four times. Moreover, while Degregorio claims she became disabled by pain from psoriasis on July 15, 2007, her next psoriasis-related visit to a health-care provider came on December 18, more than five months after she says she stopped working due to disabling pain and more than nine months after her most recent previous visit. Beyond that, Degregorio's health-care providers described her psoriasis as: (1) "overall under control" on December 18, 2007, Tr. 184; (2) "starting to clear" and "improving" on January 23, 2008, Tr. 181; and (3) "stable with only occasional flares" and "mild" on September 11, 2008, Tr. 233. Finally, none of the four treatment records from the relevant time period mention pain, and, as noted above, in two of them, Johnson had the chance to circle that symptom, but chose not to. In sum, there is substantial evidence in the record to support the ALJ's determination that Degregorio's psoriasis could not reasonably be expected to have produced disabling pain between July 15, 2007, and November 1, 2008.

Because there is no medical evidence that either of Degregorio's impairments could reasonably be expected to have produced disabling pain between July 15, 2007, and November 1,

2008, the ALJ correctly determined that Degregorio was not disabled by pain before November 1, 2008. Having correctly reached that conclusion, the ALJ was not obligated to assess Degregorio's credibility. See Guziewicz, 2010 WL 128957, at *5. Because the ALJ reached a conclusion that is supported by substantial evidence, and did so by employing the correct analytical framework, the ALJ's decision should be affirmed.

## Conclusion

The ALJ in this case has committed neither a legal nor a factual error in evaluating Degregorio's claim. Thus, I recommend that: (1) Degregorio's motion for an order reversing the Commissioner's decision, document no. 12, be denied; and (2) the Commissioner's motion for an order affirming his decision, document no. 16, be granted. See Manso-Pizarro, 76 F.3d at 16

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 181 L. Ed. 2d 268 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to

magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

```
                          _____
                          Landya McCafferty
                          United States Magistrate Judge
```

March 19, 2012

cc: Robert J. Rabuck, Esq.
    Christopher J. Seufert, Esq.
    Kelie C. Schneider, Esq.